```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/14/15
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

ROBERT BURNS LOGAN, *individually and on behalf of*
*all others similarly situated,*

                                 Plaintiff,

                    -v-

QRX PHARMA LTD. and JOHN HOLADAY,

                            Defendants.

-------------------------------------------------------------------X

                         15 Civ. 4868 (PAE)

                       <u>OPINION & ORDER</u>

PAUL A. ENGELMAYER, District Judge:

     Before the Court is an unopposed motion by Marsha Gillis, Carl Bayney, and Daniel

Rehmsmeyer (the "Gillis Group") for appointment as lead plaintiffs and for appointment of their

counsel as lead counsel. For the following reasons, the motion is granted.

**I.**     **Background**[1]

     On June 23, 2015, plaintiff Robert Burns Logan filed this proposed securities class action

on behalf of all individuals who purchased American Depository Receipts ("ADR") of QRx

Pharma Ltd. ("QRX") between January 24, 2011 and April 23, 2014. Dkt. 1 ("Compl."). QRx is

a pharmaceutical company, based in Australia, that researches and develops pain management

treatment. *Id.* ¶ 2.

     The Complaint alleges that, throughout the class period, QRx and defendant John

Holaday, QRx's former chief executive officer, made several materially false and misleading

---

[1] The following facts are drawn from the Complaint (Dkt. 1) ("Compl."), and the parties'
submissions on the lead-plaintiff motions, as cited herein. The Court takes these facts as true
solely for the purpose of resolving these motions.

statements in QRx's press releases regarding the approval of Moxduo, QRx's main experimental drug, in the United States. *Id.* ¶¶ 1, 3.[2]  Specifically, the Complaint claims that defendants made false and/or misleading statements regarding Moxduo's efficacy and safety, the sufficiency of QRx's Moxduo studies, and the likelihood of Moxduo's approval by the U.S. Food and Drug Administration ("FDA").  *Id.* ¶ 3.  On April 23, 2014, the FDA, in denying QRx's Moxduo drug application, released a memorandum which, the Complaint alleges, disclosed the following for the first time: that (1) in 2011, QRx had received a "no agreement" letter from the FDA, which stated that the FDA did not agree with QRx's study design for approval of Moxduo; (2) QRx had twice appealed the FDA's rejection of Moxduo; and (3) in trying to produce favorable test results, QRx used deceptively designed studies.  *Id.* ¶¶ 3–4.  Following these disclosures, the price of QRx ADRs dropped more than 83%, from $3.40 to $0.42.  *Id.* ¶¶ 5, 31.

The day the Complaint was filed, notice of this action was published on *GlobeNewswire*, a "national, business-oriented newswire service."  Dkt. 15, Ex. A, at 1.  As required by the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4(a)(3)(A), the notice summarized this action and notified members of the putative class that they had 60 days to move for appointment as lead plaintiff.  That 60-day period expired on August 24, 2015.

On August 24, 2015, Logan and the Gillis Group filed separate motions for appointment as lead plaintiffs and for approval of their respective counsel.  Dkt. 13–15 (Logan), 16–18 (Gillis Group).  Logan is represented by Scott+Scott, Attorneys at Law, LLP, and the Gillis Group is represented by The Rosen Law Firm P.A. (the "Rosen Law Firm").  On September 3, 2015, the

---

[2] QRx's main products are drugs that combine two different opioid painkillers, which QRx claims provide effective analgesia, while decreasing the frequency and severity of opioid-related side effects.  Compl. ¶ 2.  QRx's main experimental drug was Moxduo, comprised of morphine sulfate and oxycodone hydrochloride, which would have been the first combination drug product to contain two active opioid ingredients.  *Id.*

Court issued an order, setting a briefing schedule for these motions.  Dkt. 21.  On September 10,

2015, Logan notified the Court that he does not oppose the Gillis Group's motion.  Dkt. 22.

Explaining this position,  Logan "acknowledges that [the Gillis Group] appear[s] to possess the

'largest financial interest in the relief sought by the class,' as required by the Private Securities

Litigation Reform Act of 1995, and appear[s] to meet the other requirements for appointment

pursuant to Rule 23 of the Federal Rules of Civil Procedure."  *Id.* at 1.

## II.     Appointment of Lead Plaintiff

The PSLRA governs motions for appointment of lead plaintiff and approval of lead

counsel in putative class actions brought under the securities laws.  *In re Millennial Media, Inc.*

*Sec. Litig.*, Nos. 14 Civ. 7923 (PAE), 14 Civ. 8330 (PAE), 2015 WL 566460, at *4 (S.D.N.Y.

Feb. 10, 2015); *Vladimir v. Bioenvision, Inc.*, No. 07 Civ. 6416 (SHS) (AJP), 2007 WL 4526532,

at *2 (S.D.N.Y. Dec. 21, 2007).  It directs courts to appoint as lead plaintiff the party or parties

"most capable of adequately representing the interests of class members."  15 U.S.C. §

78u–4(a)(3)(B)(i).  Under the PSLRA, there is a rebuttable presumption that the most adequate

plaintiff is the person or group of persons that: (1) has either "filed the complaint or made a

motion in response to a notice," *id.* § 78u–4(a)(3)(B)(iii)(I)(aa); (2) in the determination of the

Court, has the "largest financial interest in the relief sought by the class," *id.* § 78u–4(a)(3)(B)

(iii)(I)(bb); and (3) satisfies all the requirements of Federal Rule of Civil Procedure 23, which

governs class actions, *id.* § 78u–4(a)(3)(B)(iii)(I)(cc).

As noted, the Gillis Group moves unopposed for appointment as lead plaintiffs.   As to

the second and third elements of the PSLRA's test:

## A.      Financial Interest

The Gillis Group certifies that they purchased 9,958 shares of QRx during the class period and lost a total of $34,744.20.  Dkt. 18, Exs. 2–3.  This financial interest is significant enough.  And in the absence of a prospective lead plaintiff with a larger financial stake in this case, the Gillis Group's financial interest renders them suitable to serve as lead plaintiffs.  *See Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, No. 11 Civ. 5097 (JFK), 2011 WL 4831209, at *2 (S.D.N.Y. Oct. 12, 2011); *Jolly Roger Offshore Fund LTD v. BKF Capital Grp., Inc.*, No. 07 Civ. 3923 (RWS), 2007 WL 2363610, at *3 (S.D.N.Y. Aug. 16, 2007) (collecting cases).

## B.      Rule 23 Requirements

The Rule 23 requirements for class certification are commonly referred to as numerosity, commonality, typicality, and adequacy.  *Sykes v. Mel S. Harris & Associates LLC*, 780 F.3d 70, 80 (2d Cir. 2015).  At this early stage of litigation, however, "'only the last two factors—typicality and adequacy—are pertinent.'"  *Cha v. Kinross Gold Corp.*, No. 12 Civ. 1203 (PAE), 2012 WL 2025850, at *6 (S.D.N.Y. May 31, 2012) (quoting *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004)).

A lead plaintiff's claims are typical where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173–74 (S.D.N.Y.2010) (citations omitted); *see also In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).  A lead plaintiff is adequate where he "does not have interests that are antagonistic to the class that he seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class that he seeks to represent."  *Glauser v. EVCI Ctr.*

*Colls. Holding Corp.*, 236 F.R.D. 184, 189 (S.D.N.Y. 2006) (citing *Dietrich v. Bauer*, 192 F.R.D. 119, 126 (S.D.N.Y. 2000)).  To obtain appointment as lead plaintiff, "'[t]he moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met.'"  *Khunt v. Alibaba Grp. Holding Ltd.*, Nos. 15 Civ. 759, 15 Civ. 811, 15 Civ. 991, 15 Civ. 1405 (CM), 2015 WL 1954134, at *11 (S.D.N.Y. May 1, 2015) (quoting *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003)).

Here, the Gillis Group's claims "are typical of the class because their claims and injuries arise from the same conduct from which the other class members' claims and injuries arise." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 45 (S.D.N.Y. 1998) (citing *Drexel*, 960 F.2d at 291).  As alleged in the Complaint, every member of the putative class "(1) purchased or acquired [QRx] securities during the class period; (2) at prices allegedly artificially inflated by defendants' materially false and misleading statements and/or omissions; and (3) suffered damages when the truth was disclosed to the market." *Jolly Roger*, 2007 WL 2363610, at *4. Accordingly, the Gillis Group's claims arise from the same alleged course of conduct as other class members' potential claims.

On the facts presently known, the Gillis Group is also an adequate class representative. They have certified that they are willing to fulfill the duties of lead plaintiffs, Dkt. 18, Ex. 2, and they have retained counsel with significant experience in securities fraud cases, *id.* Ex. 4.  And there is, as yet, no indication that the Gillis Group has interests antagonistic to those of the class. *See Plumbers, Pipefitters & MES*, 2011 WL 4831209, at *2; *Jolly Roger*, 2007 WL 2363610, at *5.

5

Because the Gillis Group has thus far satisfied all of the PSLRA requirements, the Court finds that they are the most adequate plaintiffs. There has been no credible claim that they "will not fairly and adequately protect the interests of the class" or are subject to "unique defenses" that render them incapable of adequately representing the class. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). The Court therefore appoints the Gillis Group as lead plaintiffs.

## III.   Appointing Lead Counsel

The most adequate plaintiffs may retain counsel to represent the class, subject to the Court's approval. *Id.* § 78u–(4)(a)(3)(B)(v). "There is a 'strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection.'" *Sallustro v. CannaVest Corp.*, Nos. 14 Civ. 2900, 14 Civ. 3079 (PGG), 2015 WL 1262253, at *10 (S.D.N.Y. Mar. 19, 2015) (quoting *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 (LMM), 2008 WL 4128702, at *2 (S.D.N.Y. Sept. 3, 2008)). Here, as noted, the Gillis Group has selected the Rosen Law Firm. Having reviewed the firm's submissions as to its pertinent background and experience, including litigating securities class actions, the Court finds that it is qualified to serve as lead counsel. Accordingly, the Court appoints the Rosen Law Firm as lead counsel.

## CONCLUSION

For the foregoing reasons, the Gillis Group is hereby appointed as lead plaintiffs, and the Rosen Law Firm is hereby appointed as class counsel. The Clerk of Court is directed to terminate the motions pending at docket numbers 13 and 16.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: September 14, 2015
        New York, New York